2008-NMSC-012

178 P.3d 820

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**James QUINTANA, Defendant–Petitioner.**

No. 29,909.

Supreme Court of New Mexico.

Jan. 25, 2008.

John Bigelow, Chief Public Defender, Laurel A. Knowles, Appellate Defender, Nancy M. Hewitt, Appellate Defender, Santa Fe, NM, for Petitioner.

Gary K. King, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

CHÁVEZ, Chief Justice.

{1} Defendant James Quintana, an enrolled member of Cochiti Pueblo, is alleged to have committed crimes arising from an automobile accident on State Road 16. It is undisputed that State Road 16, while bordering Santo Domingo Pueblo and Cochiti Pueb-

lo, is not within the exterior boundaries of either pueblo. The question in this case is whether State Road 16 is "Indian country" for purposes of criminal jurisdiction. If the answer is yes, then the State of New Mexico does not have criminal jurisdiction over Defendant. In a thorough and well-reasoned opinion, the Court of Appeals applied the two-prong test in *Alaska v. Native Village of Venetie Tribal Gov't (Venetie )*, 522 U.S. 520, 527, 118 S.Ct. 948, 140 L.Ed.2d 30 (1998). The Court concluded that State Road 16 is not "Indian country," and therefore the State of New Mexico has jurisdiction. We hold that at the time of the accident, the land in question was not set aside by the federal government for the use of the Indians as Indian land, and therefore affirm the Court of Appeals' holding that the State has jurisdiction in this case.

## I. BACKGROUND

{2} As noted in the Court of Appeals' opinion, the pertinent facts of this case are not in dispute. *State v. Quintana*, 143 N.M. 538, 539, 178 P.3d 823, 824 (Ct.App.2006). Defendant is an enrolled member of Cochiti Pueblo. He was involved in an automobile accident on State Road 16 in 1999. State Road 16 is built on land owned by the federal government and administered by the United States Forest Service. The Forest Service granted an easement to the New Mexico Highway Department to construct the roadway. The road serves as the border between Santo Domingo Pueblo and Cochiti Pueblo, with Cochiti Pueblo on one side of State Road 16 and Santo Domingo Pueblo on the other. At the time of the accident, the accident site was not within the boundaries of either pueblo.[1] As a result of the accident, Defendant was charged in state district court with three counts of vehicular homicide and one count of great bodily injury by reckless driving.

{3} Defendant moved to dismiss the case, arguing that the State did not have jurisdiction because the accident occurred in "Indian country." The district court granted Defendant's motion and dismissed the case after finding the "community of reference" to be Cochiti Pueblo, Santo Domingo Pueblo, and Pena Blanca. In addition, the court found that such community was set aside for dependent Indian people and was under federal superintendence. *Venetie*, 522 U.S. at 525, 118 S.Ct. 948. On appeal, the Court of Appeals reversed and remanded to the district court with instructions for the court to apply the two-prong test set forth in *Venetie*, 522 U.S. at 527, 118 S.Ct. 948, and adopted by this Court in *State v. Frank*, 2002–NMSC–026, ¶ 23, 132 N.M. 544, 52 P.3d 404, for determining whether a dependent Indian community exists. After applying the *Venetie* test, the district court again dismissed the case for lack of jurisdiction. The State appealed, and the Court of Appeals again reversed the district court, holding that the land where the accident occurred is not a dependent Indian community because it was not set aside by the federal government for the use of Indians and is not under federal superintendence. *Quintana*, 143 N.M. at 542, 178 P.3d at 827. We granted Defendant's petition for writ of certiorari and affirm.

## II. DISCUSSION

 {4} In general, "a state does not have jurisdiction over crimes committed by an Indian in Indian country." *Frank*, 2002–NMSC–026, ¶ 12, 132 N.M. 544, 52 P.3d 404 (citing *State v. Dick*, 1999–NMCA–062, ¶ 8, 127 N.M. 382, 981 P.2d 796). Congress defines "Indian country" as:

(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States ..., and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

18 U.S.C. § 1151 (1949). At issue is whether the accident site is "Indian country" because it meets the definition of "dependent Indian

---

1. Since the time of the accident, Santo Domingo Pueblo has purchased the land in question pursuant to the Santo Domingo Claims Settlement Act. 25 U.S.C. §§ 1777(a)-(c) (2000).

community" in Section 1151(b). The resolution of this issue turns on the application of the two-prong test in *Venetie*. *See State v. Romero*, 2006–NMSC–039, ¶ 12, 140 N.M. 299, 142 P.3d 887 (holding that land within the exterior boundaries of a pueblo satisfies the two-prong test in *Venetie* ); *Frank*, 2002–NMSC–026, ¶ 23, 132 N.M. 544, 52 P.3d 404. Under *Venetie*, in order for the land in question to be a dependent Indian community, it must satisfy two requirements: (1) it "must have been set aside by the Federal Government for the use of the Indians as Indian land[,]" and (2) it "must be under federal superintendence." *Venetie*, 522 U.S. at 527, 118 S.Ct. 948.

**A. Federal Set–Aside**

 {5} In *Venetie*, the United States Supreme Court provided us with the foundation underlying the federal set-aside requirement. The requirement "ensures that the land in question is occupied by an 'Indian community[,]' " *id.* at 531, 118 S.Ct. 948, and "also reflects the fact that because Congress has plenary power over Indian affairs, some explicit action by Congress (or the Executive, acting under delegated authority) must be taken to create or to recognize Indian country." *Id.* at 531 n. 6, 118 S.Ct. 948 (citation omitted).

{6} The Court of Appeals' determination that the accident site was not federally set aside is in line with this foundation. Under *Venetie*, there must be some explicit action taken by Congress or the Executive to create Indian country. *See id.* For example, in *Romero* we looked, in part, to congressional acts that explicitly recognized pueblo land as Indian country. *Id.*, 2006–NMSC–039, ¶ 15, 140 N.M. 299, 142 P.3d 887. In *Dick*, 1999–NMCA–062, ¶ 16, 127 N.M. 382, 981 P.2d 796, the fact that Congress transferred land to the Department of the Interior for the use of the Bureau of Indian Affairs was enough to support a finding of federal set-aside. Unlike *Romero*, there is no evidence of any explicit congressional or executive action recognizing State Road 16 as Indian country, nor has Congress transferred the land for the use of Indians or to the Bureau of Indian Affairs as in *Dick*.

 {7} Defendant contends that, when the practical uses of State Road 16 are taken into consideration, the set-aside requirement is satisfied because the road provides the only northern access to Cochiti Pueblo. According to Defendant, this evinces an intent by the federal government to set aside the property for ingress and egress by members of Cochiti Pueblo. However, evidence of the practical use of property has never been held to be sufficient to satisfy the set-aside requirement. *See Frank*, 2002–NMSC–026, ¶ 22, 132 N.M. 544, 52 P.3d 404 (declining to incorporate the community of reference inquiry into the *Venetie* analysis). A finding of federal set-aside, at the very least, requires some explicit congressional or executive action. *See Venetie*, 522 U.S. at 531 n. 6, 118 S.Ct. 948 ("The federal set-aside requirement ... reflects the fact that ... some explicit action by Congress (or the Executive ... ) must be taken to create or to recognize Indian country.") (citation omitted); *Blunk v. Ariz. Dep't of Transp.*, 177 F.3d 879, 883 (9th Cir.1999) (quoting *Venetie*, 522 U.S. at 531 n. 5, 118 S.Ct. 948, and holding that tribal ownership of land is not enough to satisfy federal set-aside because " 'the Federal Government must take some action setting aside the land for the use of the Indians' ").

**B. Federal Superintendence**

 {8} While the federal set-aside requirement ensures that the land in question is occupied by an Indian community, "the federal superintendence requirement guarantees that the Indian community is sufficiently 'dependent' on the Federal Government that the Federal Government and the Indians involved, rather than the States, are to exercise primary jurisdiction over the land in question." *Venetie*, 522 U.S. at 531, 118 S.Ct. 948. However, having made the determination that the first prong of *Venetie* is not met in this case, the second prong does not need to be addressed. *See id.* at 530, 118 S.Ct. 948 (concluding that, "in enacting § 1151(b), Congress indicated that a federal set-aside *and* a federal superintendence requirement must be satisfied for a finding of a 'dependent Indian community' "). Thus, because we have already determined that there was no federal set-aside in this case, the land

in question cannot qualify as a dependent Indian community.

## III. CONCLUSION

{9} For the foregoing reasons, we affirm the Court of Appeals and hold that the State has jurisdiction in this case because, at the time of the accident, the accident site was not set aside for the use of Indians.

{10} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, PETRA JIMENEZ MAES, RICHARD C. BOSSON, Justices, and RICHARD E. RANSOM (J. Pro Tem.).